UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    -v-<br><br>ALAZIM BAKER,<br>                              Defendant. | 26-cr-19 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

Defendant Alazim Baker moves to suppress evidence recovered from two warrants, one for historical cell site data for Baker's cellphone, and the other for the contents of Baker's cellphone. For the reasons set forth below, the motion is denied.

## BACKGROUND

The alleged crime in question—an assault in midtown Manhattan based on anti-Jewish animus that caused injuries to at least one of the victims—took place on October 27, 2025. Baker was later indicted for violating 18 U.S.C. § 249, which criminalizes "willfully caus[ing] bodily injury to any person . . . because of the actual or perceived race . . . religion, or national origin of any person."

In connection with Baker's prosecution, the government sought and obtained two warrants for Baker's information.

### I.    The Cell site Location Warrant

On December 11, 2025, the government obtained a warrant for historical cell site location information for Baker's phone for the period from October 1, 2025 through December 11, 2025. Dkt. 27-1. The affidavit in support of the warrant application included these facts:

1. Paragraph 7: Details about the October 27, 2025 attack, including that the assailant was wearing "what appears to be a black Adidas hooded sweatshirt and black chest bag."

2. Paragraph 9: Information about an anonymous tip stating that the assailant was Baker.

3. Paragraph 10: Information based on PATH surveillance footage that, about 2.5 hours after the assault, the assailant boarded a train at 33rd street in Manhattan, switching trains in Jersey City, NJ, and then disembarking at Newark Penn Station.

4. Paragraph 11(a): Information that one day after the October 27, 2025 attack, Baker was arrested in Irvington, NJ following an altercation with a business owner and after Baker caused damage to the business owner's car.

5. Paragraph 11(c): In connection with his arrest, Baker gave the phone number at issue in the cell site location warrant.

6. Paragraph 11(d): Baker noted that he lived in Newark, NJ.

7. Paragraph 11(e): One of the arresting officers identified the assailant from the October 27, 2025 assault as Baker.

8. Paragraph 12: Baker matches the physical appearance of the October 27, 2025 assailant and was wearing what appears to be the same chest bag and Adidas black sweatshirt.

9. Paragraph 15: Information that the affiant "[b]ased on [their] training and experience . . . know[s] that individuals involved in hate crime acts, like individuals engaged in any other kind of activity, frequently carry their cellphones with them, including when they commit these kinds of offenses."

Based on these facts, the affidavit stated the affiant's belief that "the Requested Information will provide evidence of the Subject Offense by identifying the location of [Baker] on or about October 27, 2025," and that "there is probable cause to believe that the physical location of the [cellphone] will provide evidence of the Subject Offenses. Specifically, the prospective location information is likely to lead to the location of the [cellphone], and thus, the potential discovery of additional evidence of the Subject Offense, including, for example, GPS location information associated with the [cellphone], relevant map or web search history, communications or other materials about the Subject Offense or indicative of anti-Jewish bias, among other items." *Id*. at 12 ¶ 15.

## II.    The Cellphone Warrant

On January 20, 2026, the government obtained a warrant for the search of Baker's premises and the contents of Baker's devices, including the cellphone at issue in the other warrant. Dkt. 27-2. The affidavit in support of the warrant application included these facts:

1. Paragraphs 7–12: The same information from the cell site location warrant application.

2. Paragraph 14: Based on the review of the cell site information obtained as a result of the prior warrant, that Baker's cellphone was in the immediate vicinity of the location of the October 27, 2025 assault on the date and at the time it occurred.

3. Paragraph 16–18: Information concerning Baker's premises.

4. Paragraph 19: That the electronic devices at the premises will contain evidence of the Subject Offense "including, among other things, materials and communications reflecting Baker's involvement in the assault . . . and potentially other similar acts of violence and/or materials and communications reflecting Baker's views towards Jews and his intent in committing the assault."

5. Paragraph 20: Statement that based on the affiant's "training and experience . . . individuals who, like Baker, commit physical assaults against victims of a particular race or religion

often possess on their electronic devices materials and communications reflecting their views towards that race or religion and their intent in committing assaults."

6. Paragraph 21–22: Further information concerning why electronic devices are likely to have information based on the affiant's training and experience, and why information is likely to be retained on the devices long after the alleged incident.

## DISCUSSION

### I.    The Warrants Were Supported by Probable Cause

"An officer's affidavit in support of a warrant must 'establish[] a sufficient nexus between the criminal activities alleged and [the place to be searched.]'" *United States v. Silva*, 146 F.4th 183, 189 (2d Cir. 2025) (quoting *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004)). "Importantly, '[a] showing of nexus does not require direct evidence and may be based on [a] reasonable inference from the facts presented based on common sense and experience.'" *Id*. (quoting *Singh*, 390 F.3d at 182). "Probable cause thus poses no 'high bar.'" *Id*. (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)). Instead, "[a] judicial officer need 'simply . . . make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place' under a 'totality-of-the-circumstances analysis.'" *Id*. (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

In *Silva*, the Second Circuit further clarified that "a search warrant does not require probable cause of the *use* of the property in furtherance of criminal conduct, so long as there is probable cause that the location to be searched contains relevant evidence of the criminal conduct." *Id*. at 190. The Court also clarified that "a law-enforcement affiant's claim to expertise may support a probable cause determination where it is combined with enough other specific, factual allegations that tend to link the alleged criminal conduct to the place to be searched." *Id*. Applying these standards, both warrants were plainly supported by probable cause.

As to the cell site location warrant, the affidavit plainly established a "fair probability" that Baker was the assailant in the October 27, 2025 attack, and that the phone belonged to Baker at the time of the incident. The only real question is whether there was also a "fair probability" that the cell site location data associated with phone would contain relevant evidence of criminal conduct. Viewing the facts in the affidavit in their totality, the answer is yes.

Baker focuses attention on the affiant's statement that based on their training and experience, individuals who commit hate crimes have their cell phones in their possession. Really, the agent was just making the common-sense point that as a general matter, and absent some aspect of the conduct that would dictate otherwise, people usually have their phones on their person. The affidavit acknowledges as much, noting that the agent's statement about those who engage in hate crimes would apply equally to "individuals engaged in any other kind of activity." Dkt. 27-1 at 11 ¶ 15. And in this case-specific context, there was further reason to think that Baker would have had his cellphone on his person. Recall that Baker didn't reside in New York City. Instead, after

3

the incident, the information showed that Baker boarded a series of PATH trains to Newark, where he admitted the next day that he resided. There is certainly a "fair probability" that someone taking public transit to and from their out-of-state residence would have their cellphone on their person, whether for navigation, entertainment, staying in touch with others, or accessing tickets and the like. *See* Dkt. 27 at 9 (acknowledging that the required nexus may be based on common sense and experience). And there was certainly probable cause to believe that Baker was the assailant in the October 27, 2025 attack, making it fairly probable, given the facts and circumstances, that the cell site location being pursued would contain relevant evidence of criminal conduct, namely, information corroborating Baker's presence at the scene of the crime when the crime happened.

To be clear, the Court isn't saying that in every case, cell site location data will be available based on a generalized "training and experience" statement from the affiant. Instead, what is required is a review of the totality of the circumstances. Here, the circumstances support a finding of probable cause. (Putting aside the cell site location data from October 27, 2025, data *after* that date would obviously help to locate the cellphone itself, and for reasons explained in the cell site location data warrant application and the subsequent warrant application for Baker's premises and electronic devices, that was plainly supported by probable cause.)

As for the premises-and-electronic-devices warrant, Baker challenges only the probable-cause determination supporting the warrant as to his cellphone, not the warrant's scope. But here, probable cause issue is even more clear cut. With probable cause that Baker was responsible for the October 27, 2025 assault and that it was motivated by anti-Jewish animus, the affidavit amply provides a "fair probability" that information concerning the attack, other attacks, or communications and information concerning Baker's anti-Jewish animus, all relevant to the both the *mens rea* and *actus reus* of the charged crime, would be on his phone. It is reasonable to think that an individual motivated by anti-Jewish animus might watch antisemitic content online, make antisemitic comments, or otherwise engage in antisemitic discussions. And even putting that all to the side, after engaging in the type of vicious attack alleged, there was every reason to believe that communications related to the attack would be on Baker's cellphone. This is regardless of the cell site information in the warrant, which just bolstered what other information in the application supported—that Baker was the assailant. Therefore, even if there was some lack of probable cause in the cell site location warrant, and there isn't, the device warrant was nevertheless proper.

Baker relies principally on *United States v. Bertini*, 2023 WL 8258334 (S.D.N.Y. Nov. 29, 2023), which granted a motion to suppress cell site location evidence. For two reasons, that case doesn't move the needle. First, the *Bertini* court concluded that the affidavit in question didn't show probable cause that the defendant had committed a crime in the first place (there, bank burglary), *id*. at *7, and the court went on to conclude that there were no factual allegations suggesting that the defendant ever "used or carried his cell phone in connection with, or to facilitate, a bank burglary." *Id*. at *10. On the first point, this case is factually distinguishable given that there *was* probable cause that Baker had committed the assault in question. On the second, *Bertini* misapplied the legal standard, as the Second Circuit in *Silva* subsequently made clear. The question isn't whether the property was used in connection with the crime, just whether there is a fair probability

that the location to be searched is likely to contain relevant evidence of the crime. And here, that boils down to the simple question of whether the cell site location would confirm what the other evidence in the record made clear—that Baker was at the scene of the crime on the date and time in question. Given the factual circumstances described above, that was a fair assumption to make in this particular case.

## II.    In Any Event, the Good Faith Exception Would Apply

Even if the warrants were not supported by probable cause, the government would easily be able to demonstrate that they were issued in good faith, and therefore that exclusion of the evidence at issue would be unwarranted. The Second Circuit "has identified four circumstances in which [courts] do not accept that the government acted in good faith: (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *Silva*, 146 F.4th at 193 (quotations omitted).

Here, Baker relies solely on prong (3), that the applications are "so lacking in indicia of probable cause as to render reliance upon [them] unreasonable." *See* Dkt. 29 at 5–6. But as discussed above, the applications were supported by probable cause, and even if that were a close question, they were not "so lacking in indicia of probable cause" so as to render reliance on them "unreasonable."

### CONCLUSION

For these reasons, Baker's motion to suppress evidence is DENIED. The Clerk of Court is respectfully directed to terminate Dkt. 26.

SO ORDERED.

Dated: August 6, 2026
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge